# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CALDERON GRANADOS, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, a Delaware Corporation, doing business as ALILA MAREA BEACH RESORT ENCINITAS, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 23-cv-01001-H-VET<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT;**<br><br>**(3) APPOINTING CLASS REPRESENTATIVE, CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR;**<br><br>**(4) APPROVING CLASS NOTICE; AND**<br><br>**(5) SCHEDULING FINAL APPROVAL HEARING**<br><br>[Doc. No. 17.] |

On February 15, 2024, Plaintiff Carlos Calderon Granados filed an unopposed motion for preliminary approval of class action settlement. (Doc. No. 17.) The Court held a hearing on Plaintiff's motion on April 8, 2024. Mitchell J. Murray appeared for Plaintiff

Granados.  Michael Afar appeared for Defendant Hyatt Corporation ("Hyatt").  For the reasons below, the Court grants Plaintiff's motion and sets a schedule for further proceedings.

## Background

### I. Factual and Procedural Background

This is a wage and hour class action.  Plaintiff is a former employee of Defendant Hyatt, who worked at the Alila Marea Beach Resort Encinitas as a massage therapist from approximately March 2021 until August 2021.  (Doc. No. 17-2, Hawkins Decl. ¶ 3.)  Plaintiff alleges that Defendant's uniform policies and practices as to timekeeping, meal periods, rest periods, wage payments, minimum wages, overtime, wage statements, and pay at termination applicable to all non-exempt employees violate California law.  (Id. ¶ 38.)

On August 11, 2022, Plaintiff filed a complaint against Defendant in the Superior Court of California for the County of San Diego.  (Doc. No. 1-2, Compl.)  On October 18, 2022, Plaintiff filed a second action against Defendant in state court, which asserted a standalone claim under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq.  (Doc. No. 17-2, Hawkins Decl. ¶ 5; Doc. No. 1, Notice of Removal ¶ 4.)  On April 10, 2023, the state court consolidated the two actions for all purposes.  (Doc. No. 17-2, Hawkins Decl. ¶ 8; Doc. No. 1, Notice of Removal ¶ 5.)  On April 27, 2023, Plaintiff filed a first amended complaint ("FAC") against Defendant in state court.  (Doc. No. 1-3, FAC.)  In the FAC, Plaintiff alleges causes of action for: (1) failure to pay minimum wages; (2) failure to accurately pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to authorize and permit lawful rest periods; (5) failure to timely pay wages due and payable during employment; (6) failure to timely pay wages owed upon separation from employment; (7) knowing and intentional failure to comply with itemized employee wage statement provisions; (8) violation of California's Unfair Competition Law ("UCL"); and (9) penalties under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq.  (Id. ¶¶ 58-141.)

On May 31, 2023, Defendant removed the action from state court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441, 1446 on the basis of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d).  (Doc. No. 1, Notice of Removal.)  On May 31, 2023, Defendant filed an answer to Plaintiff's complaint.  (Doc. No. 2.)

On November 17, 2023, Plaintiff filed a notice of settlement.  (Doc. No. 12.)  By the present motion, Plaintiff moves for: (1) preliminary approval of the class action settlement and release of claims; (2) approval of the proposed notice of settlement; (3) the scheduling of a final approval hearing.  (Doc. No. 17-1 at 1, 24.)

## II.     The Proposed Settlement

The settlement agreement defines the settlement class as: "all current and former non-exempt, hourly employees working for Hyatt at the Alila Marea Beach Resort Encinitas at any time between January 25, 2021, to January 5, 2024."  (Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement at § 1.3.)

Under the settlement agreement, Defendant will pay a gross settlement amount of $325,000.  (Id. §§ 1.16, 5.1.)  Each settlement class member will receive an individual payment based on the following calculation:

> Each Class Member's potential share of the Net Settlement Amount will be calculated by dividing the number of Weeks Worked by the Class Member by all Weeks Worked during the Class Period by all Class Members, multiplied by the Net Settlement Amount [*i.e.*, (individual Weeks Worked ÷ total Weeks Worked by Class Members) x Net Settlement Amount].

(Id. § 5.7.1.)  Upon full funding by Defendant of the sums owed under the settlement agreement, class members will release "Defendant . . . from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between August 11, 2018, to January 5, 2024, for any and all claims that were raised or could have been raised based on the factual allegations made in the operative First Amended Consolidated Complaint."  (Id. § 6.1.)

Plaintiff has indicated that he intends to seek a class representative's service payment

of up to $10,000.00 from the settlement fund. (Id. § 5.4.) Class counsel also intends to request an attorneys' fee award of $108,333.33, or one-third of the gross settlement fund, as well as costs supported by adequate documentation in the amount up to $20,000. (Id. § 5.3.)

The parties selected CPT Group, Inc. be appointed to serve as the settlement administrator. (Id. § 3.1.) The settlement administrator will mail the class notice to the class via First Class U.S. Mail. (Id. § 3.4.) The settlement administrator will also issue the distribution of the individual settlement payments to the class. (Id. §§ 5.8, 5.9.) Settlement class members reserve the right to object or opt out of the settlement, except that they may not opt out of the settlement of the PAGA claims. (Id. §§ 4.2.1, 4.2.2, 4.3.1.) See O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (explaining that "in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class [are] bound by an adverse PAGA judgment or settlement" (citing Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009)).

## Discussion

**I.   Class Certification**

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(a) and (b) for purposes of settlement. (Doc. No. 17-1 at 5-9.) The proposed settlement class is defined as "all current and former non-exempt, hourly employees working for Hyatt at the Alila Marea Beach Resort Encinitas at any time between January 25, 2021, to January 5, 2024." (Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement § 1.3.)

A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Id.

**A.   Rule 23(a) Requirements**

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following prerequisites are met: (1) numerosity; (2) commonality; (3) typicality;

1  and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

2  The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010); see also Hilsley v. Ocean Spray Cranberries, Inc., No. 17-cv-02355-GPC-MDD, 2018 WL 6300479, *3 (S.D. Cal. Nov. 29, 2018) ("As a general rule, . . . classes of 40 or more are numerous enough." (quoting Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988))); West v. Cal. Servs. Bureau, Inc., 323 F.R.D. 295, 303 (N.D. Cal. 2017) (a class of more than 40 "raises a presumption of impracticability of joinder").

Plaintiff states that Defendant's payroll records show that the proposed settlement class as of the date of the parties' mediation contains approximately 464 class members. (Doc. No. 17-1 at 5; Doc. No. 17-2, Hawkins Decl. ¶ 37.) As such, the numerosity prerequisite is met here. See Rannis, 380 F. App'x at 651; Hilsley, 2018 WL 6300479, at *3; West, 323 F.R.D. at 303.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 663 (9th Cir. 2022) (quoting Wal-Mart, 564 U.S. at 350). "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." Id. "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart, 564 U.S. at 350) (emphasis removed).

Plaintiff argues that the proposed settlement class satisfies the commonality

requirement because the class's claims for violation of California law are based on Defendant's uniform policies, practices, and procedures as to timekeeping, meal periods, rest periods, wage payments, minimum wages, overtime, reimbursements, wage statements, and pay at termination applicable to non-exempt employees. (Doc. No. 17-1 at 6.) Plaintiff further explains that the members of the proposed settlement class and Plaintiff are all non-exempt employees working in the same hotel location, working under the same set of unlawful policies and practices. (Id. at 7.) Plaintiff contends that the common question here include: (1) whether Defendant paid class members at least minimum wage for all hours worked; (2) whether Defendant knew or should have known that class members were required to perform work off the clock; (3) whether Defendant accurately calculated and paid all class members overtime premiums for overtime hours worked; (4) whether Defendant accurately calculated class members' regular rate; (5) whether meal and/or rest period premiums were accurately paid at the regular rate; (6) whether class members were provided with compliant rest and meal periods; (7) whether Defendant was required to reimburse for expenses incurred; (8) whether Defendant had a policy and practice of providing a 30-minute lawful uninterrupted meal break within the first five hours of work and a second 30-minute uninterrupted meal break before the start of the tenth hour of work; (9) whether Defendant authorized and permitted class members to take a lawful net 10-minute uninterrupted rest periods for every major fraction of four hours worked; (10) whether Defendant furnished class members with complete and accurate itemized wage statements; and (11) whether Defendant paid class members all wages at the termination of their employment. (Id. at 7-8.) These common questions raised by Plaintiff are sufficient to satisfy the commonality requirement.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When determining whether the typicality prerequisite is met, courts will look at "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same

course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Importantly, the typicality inquiry focuses on "the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon, 976 F.2d at 508).

Here, Plaintiff and the members of the proposed settlement class are all non-exempt employees of Defendant working in the same hotel location, working under the same set of allegedly unlawful policies and practices. (Doc. No. 17-1 at 7.) Plaintiff contends that his claims and the rest of the class claims are based on the same policies and practices and identical legal theories and that all class members, including Plaintiff, have suffered the same violations. (Id. at 7-8; Doc. No. 17-2, Hawkins Decl. ¶ 39.) Plaintiff has sufficiently demonstrated that his claims are typical of the claims of the class, and, thus, the typicality requirement has been satisfied.

The adequacy of representation prerequisite requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will "prosecute the action vigorously" on behalf of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); see Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

Here, Plaintiff represents that he has no conflict of interest with the class, and he is committed to fairly and adequately protecting the interests of the class. (Doc. No. 17-1 at 8; Doc. No. 17-2, Hawkins Decl. ¶ 40; Doc. No. 17-4, Granados Decl. ¶ 5.) Plaintiff's counsel also has no conflict of interest with the class. (Doc. No. 17-1 at 8; Doc. No. 17-2, Hawkins Decl. ¶ 40.) In addition, Plaintiff's counsel has extensive experience in litigating class actions, including wage and hour and PAGA actions. (Doc. No. 17-1 at 8; Doc. No. 17-2, Hawkins Decl. ¶¶ 40, 94-101.) As such, the adequacy of representation requirement has been met.

In sum, all of the prerequisites of Rule 23(a) are satisfied here.

B.     Rule 23(b)(3) Requirements

Federal Rule of Civil Procedure 23(b)(3) requires a court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citation omitted).  If the parties seek to certify a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." Id. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

                i.     Predominance

A plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted).  It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation omitted).

Here, Plaintiff contends that common questions of law and fact predominate regarding the claims of the class because all class members were subject to Defendant's same policies and procedures, which give rise to the class's claims.  (Doc. No. 17-1 at 9; Doc. No. 17-2, Hawkins Decl. ¶¶ 38, 41.)  The Court agrees.  As such, common questions of law and fact predominate here.

/ / /

ii.   Superiority

A plaintiff must also demonstrate the superiority of maintaining a class action. Fed. R. Civ. P. 23(b)(3). In considering whether a class action is superior, a court may consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id. The class action method is generally considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

Here, the parties estimate that the settlement class consists of approximately 464 members and all their claims are based on the same allegedly unlawful policies and practices and the same legal theories. (See Doc. No. 17-2, Hawkins Decl. ¶¶ 37-39, 41.) Resolving these disputes in a single class action rather than individually would promote greater efficiency and reduce litigation costs. See Johnson v. Serenity Transportation, Inc., No. 15-CV-02004-JSC, 2018 WL 3646540, at *15 (N.D. Cal. Aug. 1, 2018) ("[A] class action is more manageable because several claims turn on [defendant]'s common policies or lack thereof, which can be proven through evidence that will be applicable to the entire class."). As such, a class action is the superior method of adjudicating this matter.

In sum, the requirements of Rule 23(b)(3) are satisfied. As a result, the Court grants preliminary certification of the proposed class. The Court may review this finding at the final approval hearing.

C.   Appointment of Class Representative and Class Counsel

Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a). As such, Plaintiff is appointed as class representative. See Coleman v. United Servs. Auto. Ass'n, No. 21-CV-217-RSH-KSC, 2023 WL 9110926, at *28 (S.D. Cal. Dec.

22, 2023) ("Rule 23 governs whether a plaintiff should be appointed as class representative" (citing In re Bridgepoint Educ. Inc. Secs. Litig., No. 12-cv-1737-JM-JLB, 2015 WL 224631, *8 (S.D. Cal. Jan. 15, 2015)).

Under Rule 23(g), a court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). A court must consider the following factors when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, James Hawkins APLC has extensive experience litigating class actions, including wage and hour and PAGA actions. (See Doc. No. 17-2, Hawkins Decl. ¶¶ 40, 94-101.) As such, James Hawkins APLC is appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## II. The Settlement

Federal Rule of Civil Procedure 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (citation omitted). To make this determination, the Court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id.

"In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "Prior to

formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). "Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund." Hefler v. Wells Fargo & Company, No. 16-cv-05479-JST, 2018 WL 4207245, *8 (N.D. Cal. Sept. 4, 2018) (quoting In re Bluetooth, 654 F.3d at 947).

Given that some of these factors cannot be fully assessed until a court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted); see Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 169 (N.D. Cal. 2019). Rather, at the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. Alberto, 252 F.R.D. at 666 (citation omitted); see Uschold, 333 F.R.D. at 169 ("At the preliminary approval stage, 'the settlement need only be potentially fair.'"). Preliminary approval of a settlement and notice to the class is appropriate if (1) "the proposed settlement appears to be the product of serious, informed, and non-collusive negotiations"; (2) "has no obvious deficiencies"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. Apr. 12, 2007) (citation omitted); see also Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 2268853, *2–*3 (S.D. Cal. May 24, 2007).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class

action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted).

After reviewing the proposed settlement in light of the above factors, the Court concludes that preliminary approval of the settlement is appropriate. The proposed settlement agreement appears to be the result of serious, informed, and non-collusive negotiations. See Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80. The proposed settlement was reached by the parties during an adversarial full-day mediation with an experienced complex class action mediator. (Doc. No. 17-2, Hawkins Decl. ¶ 11.) Prior to reaching that settlement at the mediation, class counsel conducted a thorough investigation into the factual and legal issues implicated by Plaintiff's claims that allowed the parties to objectively assess the settlement's reasonableness, including:

> (1) determining Plaintiff's suitability as private attorney general and class representative through interviews, background investigations, and analyses of his employment files and related records; (2) evaluating all of Plaintiff's potential class and representative claims; (3) engaging in informal discovery and investigation, which included a review of Defendant's timekeeping, meal period and rest break policies; documents evidencing Defendant's handbooks, policies and procedures for managing payment for all hours worked, meal periods and rest breaks; and other relevant information, including Plaintiff's personnel and payroll file; (4) exchanging documents, data, and information based on electronic time and pay records, for the putative Class Members to determine the number of current and former putative class members who worked during the relevant time period, the total number of workweeks at issue, the average hourly rate for the putative class and aggrieved employees; (5) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (6) analyzing employees' time, pay, and wage records, as well as attestation records, and consulting with an expert; (7) reviewing Defendant's employment policies and practices; (8) researching settlements in similar cases; (9) evaluating Plaintiff's claims and estimating Defendant's liability for purposes of settlement; (10) drafting the mediation brief; and (11) participating in the mediation.

(Id. ¶¶ 13, 23.) Considering this history, the record indicates the parties "carefully investigated the claims before reaching a resolution," which weighs in favor of preliminary approval. Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted); see also Loreto v. Gen. Dynamics Info. Tech., Inc., No. 19-cv-1366-GPC, 2021 WL 3141208, *4 (S.D. Cal. July 26, 2021) (finding that a settlement "facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure," supported preliminary approval); In re Zynga Inc. Sec. Litig., No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'").

The proposed settlement agreement also does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to the class representative or segments of the class, and falls within the range of possible approval. See Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80. Further, class counsel is experienced in class action litigation, including wage and hour and PAGA actions. (See Doc. No. 17-2, Hawkins Decl. ¶¶ 40, 94-101.) See Romero v. Securus Tech., Inc., No. 16-cv-1283-JM, 2020 WL 3250599, *6 (S.D. Cal. June 16, 2020) (finding that class counsel's "extensive experience in complex litigation and class actions" supported preliminary approval). Class counsel represents that although it firmly believes in the strength of Plaintiff's claims, Defendant has strong defenses to the claims, and those defenses impose a significant risk of no recovery for the class in this action. (Doc. No. 17-2, Hawkins Decl. ¶¶ 46-52; Doc. No. 17-1 at 15-16.) The parties' settlement is a reasonable compromise that yields a prompt, certain, and substantial recovery for the class. (Id. ¶¶ 48, 51.)

Moreover, the proposed settlement is for $325,000, with an estimated net settlement amount of about $165,666.67. (Doc. No. 17-2, Settlement § 1.16, 1.17, 1.20; Doc. No. 17-1 at 3.) And the settlement fund is non-reversionary, meaning that none of the gross settlement amount will revert back to Defendant. (Doc. No. 17-1 at 1; Doc. No. 17-2, Settlement § 5.7.) Plaintiff's counsel represents that the gross settlement amount is

approximately 33.6% of the realistic liability faced by Defendant, including the PAGA claims.[1] (Doc. No. 17-2, Hawkins Decl. ¶ 90; Doc. No. 17-1 at 20.) This amount is a fair and reasonable result given the Defendant's defenses and falls within the range of possible approval. See Loeza v. JPMorgan Chase Bank, NA, No. 13-cv-0095-L-BGS, 2015 WL 13357592, *8 (S.D. Cal. Aug. 8, 2015) ("In determining whether a settlement agreement is substantively fair to the class, a court must balance the value of plaintiffs' expected recovery against the value of the settlement offer." (citing Tableware Antitrust Litig., 484 F. Supp. 2d at 1080)); see also Zynga, 2015 WL 6471171, *10 ("A cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)).

Class counsel also intends to request an attorneys' fee award of $108,333.33, or one-third of the gross settlement fund, as well as costs supported by adequate documentation in the amount up to $20,000. (Doc. No. 17-2, Hawkins Decl. ¶ 91; Doc. No. 17-2, Settlement § 5.3.) The request for attorneys' fees is within the range of acceptable attorneys' fees in Ninth Circuit cases. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. Mar. 6, 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% the total settlement value, with 25% considered the benchmark." (citations omitted)); see also Bluetooth, 654 F.3d at 942 (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award" in class action settlements). Additionally, the proposed incentive award of up to $10,000 for Plaintiff appears to be within the range of possible approval. (Doc. No. 17-2, Settlement § 5.4.) See Gutierrez v. Amplify Energy Corp., No. 821CV01628DOCJDEX, 2023 WL 6370233, at *8 (C.D. Cal. Sept. 14, 2023) ("Service awards of $7,500 or larger are often awarded in this Circuit.").

For the foregoing reasons, the Court conditionally grants preliminary approval of the

---

[1] Plaintiff's counsel provides an analysis of the claims in this case and estimates Defendant's overall exposure in the matter as approximately $966,690.50. (Doc. No. 17-2, Hawkins Decl. ¶ 90; see also Doc. No. 17-1 at 18-20.)

proposed settlement. The Court reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

## III. Class Notice

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Roes, 1–2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 174 (1974)). In addition, the class notice must satisfy the content requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

### A.   Content of Notice

The content of the proposed class notice meets the requirements of Rule 23(c)(3). (Doc. No. 17-2, Hawkins Decl. Ex. 2 at ECF pp. 83-90.) In clearly understandable language, the proposed class notice provides the following: a description of the lawsuit; a description of the settlement class and their claims; an explanation of the material elements of the settlement, including the net settlement amount and the amount of weeks the member has worked; a statement declaring that class members may exclude themselves from or object to the settlement; a description that explains how class members may exclude themselves from the settlement, object to the terms of the settlement, and/or dispute the number of weeks worked; a description of the binding effect of the class judgment on class members who do not opt out; and a description of the fairness hearing and how class members can participate in it. (See id.)

### B. Method of Notice

The proposed method of notice is also reasonable. The parties have requested that CPT Group, Inc. be appointed to serve as the settlement administrator. (Doc. No. 17-2, Hawkins Decl., Ex. 1, Settlement § 3.1.) Within 21 days of the Court's entry of a preliminary approval order, Defendant will provide the settlement administrator with the name of each class member and their most current known address, social security number, and dates of employment. (Id. § 3.2.) Within 14 days of receiving the class member data from Defendant, the settlement administrator will mail the notice of class action settlement and request for exclusion to the class members via First Class U.S. Mail. (Id. § 3.4.) Any mailing returned to the settlement administrator as undeliverable will be sent within three business days via First Class U.S. Mail to the forwarding address affixed thereto.[2] (Id. § 3.4.1.) Class members may opt out of the settlement by mailing to the settlement administrator a request for exclusion within 45 days from the postmark date of the initial mailing of the notice of class action settlement and request for exclusion. (Id. § 4.2.1.) Class members may also object to the settlement by sending the objection to the settlement administrator within 45 days from the postmark date of the initial mailing of the notice of class action settlement. (Id. § 4.3.1.)

After reviewing the content and the proposed method of providing notice, the Court determines that the class notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice to the class of the proposed settlement.

## IV. Scheduling Final Approval Hearing

The Court schedules the final approval hearing for **Monday, August 26, 2024**, at **10:30 a.m. Pacific Time.** Defendant must submit a class list to the settlement

---

[2] If no forwarding address is provided, the settlement administrator will attempt to determine the correct address by using the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address change. (Doc. No. 17-2, Hawkins Decl., Ex. 1, Settlement § 3.4.1.)

administrator by **Monday, April 29, 2024**.  The settlement administrator must mail class notice packets to all class members as set forth in the settlement agreement by **Monday, May 13, 2024**.  **Monday, June 27, 2024** is the deadline for class member to exercise any rights with regard to the settlement, including opting out of the settlement and objecting to the settlement.  Any response from class members must be postmarked for mail with the U.S. Postal Service.  Plaintiff and class counsel must file all papers in support of final approval, the plan of allocation, and any fee and expense application or compensatory award by **Monday, July 29, 2024**.  Any reply papers must be filed by **Monday, August 12, 2024**.

## Conclusion

For the reasons above, the Court grants Plaintiff's motion.  The Court certifies the class for purposes of settlement, preliminarily approves the proposed settlement, appoints class representative and class counsel, and approves the form and manner of the notice of the proposed settlement to the settlement class members.  The Court also appoints CPT Group, Inc. as the settlement administrator.  Further, the Court schedules the final approval hearing for **Monday, August 26, 2024, at 10:30 a.m. Pacific Standard Time**.  Plaintiff must file a motion for final approval of the settlement, and any motions for fee awards and incentive awards on or before **Monday, July 29, 2024**.

**IT IS SO ORDERED.**

DATED: April 8, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT