UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CALDERON GRANADOS, individually and on behalf of himself and all others similarly situated,<br><br>                                        Plaintiff,<br>v.<br>HYATT CORPORATION, a Delaware Corporation, doing business as ALILA MAREA BEACH RESORT ENCINITAS, and DOES 1-50, inclusive,<br><br>                                        Defendants. | Case No.: 23-cv-01001-H-VET<br><br>**ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br><br>[Doc. No. 23.]<br><br>**(3) GRANTING PLAINTIFF'S UNOPPOSED MOTION ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE INCENTIVE AWARD**<br><br>[Doc. No. 24.] |

On July 29, 2024, Plaintiff Carlos Calderon Granados filed an unopposed motion for final approval of class action settlement and an unopposed motion for attorneys' fees, costs, and a class representative incentive award. (Doc. Nos. 23, 24.) The Court held a final

approval hearing on August 26, 2024. Paul Brown appeared for Plaintiff Granados. Michael Afar appeared for Defendant Hyatt Corporation ("Hyatt"). No class members filed an objection and no objectors appeared at the final approval hearing. For the reasons below, the Court grants Plaintiff's motion for final approval of class action settlement, and the Court grants Plaintiff's motion for attorneys' fees, costs, and a class representative incentive award.

## Background

### I.  Factual and Procedural Background

This is a wage and hour class action. Defendant Hyatt is a multinational company that manages and franchises luxury and business hotels, resorts, and vacation properties. (Doc. No. 23-1 at 2.) Plaintiff is a former employee of Defendant Hyatt, who worked at the Alila Marea Beach Resort Encinitas as a massage therapist from approximately March 2021 until August 2021. (Doc. No. 17-2, Hawkins Decl. ¶ 3.) Plaintiff alleges that Defendant's uniform policies and practices as to timekeeping, meal periods, rest periods, wage payments, minimum wages, overtime, wage statements, and pay at termination applicable to all non-exempt employees violate California law. (Id. ¶ 38.)

On August 11, 2022, Plaintiff filed a complaint against Defendant in the Superior Court of California for the County of San Diego. (Doc. No. 1-2, Compl.) On October 18, 2022, Plaintiff filed a second action against Defendant in state court, which asserted a standalone claim under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq. (Doc. No. 17-2, Hawkins Decl. ¶ 5; Doc. No. 1, Notice of Removal ¶ 4.) On April 10, 2023, the state court consolidated the two actions for all purposes. (Doc. No. 17-2, Hawkins Decl. ¶ 8; Doc. No. 1, Notice of Removal ¶ 5.) On April 27, 2023, Plaintiff filed a first amended complaint ("FAC") against Defendant in state court. (Doc. No. 1-3, FAC.) In the FAC, Plaintiff alleges causes of action for: (1) failure to pay minimum wages; (2) failure to accurately pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to authorize and permit lawful rest periods; (5) failure to timely pay wages due and payable during employment; (6) failure to timely pay

wages owed upon separation from employment; (7) knowing and intentional failure to comply with itemized employee wage statement provisions; (8) violation of California's Unfair Competition Law ("UCL"); and (9) penalties under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq.  (Id. ¶¶ 58-141.)

On May 31, 2023, Defendant removed the action from state court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441, 1446 on the basis of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d).  (Doc. No. 1, Notice of Removal.)  On May 31, 2023, Defendant filed an answer to Plaintiff's complaint.  (Doc. No. 2.)

On October 5, 2023, the parties participated in a full day of mediation with an experienced class action mediator.  (Doc. No. 17-2, Hawkins Decl. ¶¶ 11, 19.)  The process was adversarial, and the parties were unable to reach an agreement on their own.  (Id.)  It was only with the mediator's assistance that the parties were able to reach a proposed settlement.  (Id.)

On November 17, 2023, Plaintiff filed a notice of settlement.  (Doc. No. 12.)  On February 15, 2024, Plaintiff filed an unopposed motion for preliminary approval of class action settlement.  (Doc. No. 17.)  On April 8, 2024, the Court granted Plaintiff's motion, and the Court: (1) certified the class for settlement purposes; (2) preliminarily approved the class action settlement; (3) appointed a class representative, class counsel, and a settlement administrator; (4) approved the class notice; and (5) scheduled a final approval hearing. (Doc. No. 22 at 17.)  The Court appointed Plaintiff as class representative, James Hawkins APLC as class counsel, and CPT Group, Inc. ("CPT") as the settlement administrator.  (Id. at 10, 17.)

By the present motions, Plaintiff moves for final approval of the class action settlement.  (Doc. No. 23-1.)  In addition, Plaintiff moves for attorneys' fees, costs, and a class representative incentive award.  (Doc. No. 24-1.)

/ / /

/ / /

## II. The Settlement Agreement

On February 14, 2024, the parties finalized the settlement agreement. (See Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement.) The settlement agreement defines the settlement class as: "all current and former non-exempt, hourly employees working for Hyatt at the Alila Marea Beach Resort Encinitas at any time between January 25, 2021, to January 5, 2024." (Id. § 1.3.)

Under the settlement agreement, Defendant will pay a gross settlement amount of $325,000.00. (Id. §§ 1.16, 5.1.) Each settlement class member will receive an individual payment based on the following calculation:

> Each Class Member's potential share of the Net Settlement Amount will be calculated by dividing the number of Weeks Worked by the Class Member by all Weeks Worked during the Class Period by all Class Members, multiplied by the Net Settlement Amount [*i.e.*, (individual Weeks Worked ÷ total Weeks Worked by Class Members) x Net Settlement Amount].

(Id. § 5.7.1.) Upon full funding by Defendant of the sums owed under the settlement agreement, class members will release "Defendant . . . from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between August 11, 2018, to January 5, 2024, for any and all claims that were raised or could have been raised based on the factual allegations made in the operative First Amended Consolidated Complaint." (Id. § 6.1.)

In the settlement agreement, Plaintiff indicates that he intends to seek a class representative's service payment of up to $10,000.00 from the settlement fund. (Id. § 5.4.) Class counsel also intends to request an attorneys' fee award of $108,333.33, or one-third of the gross settlement fund, as well as costs supported by adequate documentation in the amount up to $20,000. (Id. § 5.3.)

In the present motion, Plaintiff seeks the following distribution of the $325,000.00 gross settlement amount: (1) $108,333.33 in attorneys' fees; (2) litigation expenses of $15,057.24; (3) a class representative payment of $10,000.00 for Plaintiff; (4) administrative costs of $10,000.00; (5) a PAGA payment of $10,000, apportioned 75%

($7,500) to the Labor Workforce and Development Agency ("LWDA") and 25% ($2,500) to aggrieved employees; and (6) a net settlement amount of $174,109.43. (Doc. No. 23-1 at 8-9; Doc. No. 23-3, Singh Decl. ¶ 10.)  The estimated average payment to class members is $331.93 and the estimated average PAGA payment to aggrieved employees is $5.17. (Doc. No. 23-3, Singh Decl. ¶¶ 11-12.)

### III.   Class Notice

The Court appointed CPT as the settlement administrator for this action. (Doc. No. 22 at 17.)  On April 8, 2024, CPT received from class counsel the class notice prepared by the parties and approved by the Court. (Doc. No. 23-3, Singh Decl. ¶ 3.)

Between April 25, 2024, and May 14, 2024, CPT received a data file from Defendant containing each class member's name, last known address, work weeks, PAGA weeks, and social security number. (Id. ¶ 5.)  The mailing list contained 517 Class Members, including 484 Aggrieved Employees who are PAGA eligible. (Id.)  The mailing addresses contained in the class list were processed and updated by CPT utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (Id. ¶ 6.)

On May 22, 2024, CPT mailed notice packets to the 517 individuals. (Id.)  As of July 17, 2024, 36 notice packets were returned by the post office. (Id. ¶ 7.)  CPT performed a skip trace to locate new mailing addresses. (Id.)  As a result of the skip trace, or at the request of class counsel or the class members themselves, 25 notice packets were remailed. (Id.)  Additionally, 6 notice packets were forwarded. (Id.)  CPT has deemed 11 notice packets undeliverable because a better mailing address could not be found despite skip tracing. (Id.)

As of July 17, 2024, CPT has not received any requests for exclusion, disputes, or objections. (Id. ¶ 8.)  CPT reports that a total of 517 class members will be issued an

individual settlement payment, which represents a 100.00% participation rate.[1]  (Id. ¶ 9.)

## Discussion

I.  **Final Certification of Settlement Class**

The Court previously found that all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been met in its order preliminarily certifying the class. (Doc. No. 22 at 9.)  Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class, the Court incorporates its prior analysis by reference, (id. at 4–9), and finds that final class certification for settlement is appropriate.  The Court certifies the following as the class members: is defined as "all current and former non-exempt, hourly employees working for Hyatt at the Alila Marea Beach Resort Encinitas at any time between January 25, 2021, to January 5, 2024." (Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement § 1.3; Doc. No. 24-2, Hawkins Decl. ¶ 4.)

II.  **Final Approval of the Class Action Settlement**

Class action settlements must be approved by the district court.  Fed. R. Civ. P. 23(e). Specifically, Federal Rule of Civil Procedure 23(e)(1)–(5) requires a district court to: (1) ensure notice is sent to all class members; (2) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (4) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).

Class counsel filed the settlement agreement on February 15, 2024.  (See Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement.)  In addition, class members were given an opportunity to object to the settlement within 45 calendar days of mailing of the notice packets (through June 27, 2024).  (See Doc. No. 23-2, Hawkins Decl. ¶ 10; Doc. No. 23-1

---

[1] In addition to the class notice, on February 15, 2024, Plaintiff provided notice of the settlement agreement to the LWDA in compliance California Labor Code § 2699. (Doc. No. 17-2, Hawkins Decl. ¶ 36.)

at 11.) As of July 17, 2024, no objections have been received by the settlement administrator. (Doc. No. 23-3, Singh Decl. ¶ 8.) Following the final fairness hearing, the Court evaluates the adequacy of notice and conducts its final review of the settlement.

### A.   Adequacy of Notice

Adequate notice of the class settlement must be provided under Federal Rule of Civil Procedure 23(e). "While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice." Winans v. Emeritus Corp., No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016); see also Silber v. Mabon, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (explaining that the district court need not ensure all class members receive actual notice, only that "the best practicable notice" is given).

The Court previously reviewed the content of the class notice, the method for providing notice, and the procedure for class members to opt out or object at the preliminary approval stage and found each to be satisfactory under Rule 23(c)(2)(B) and Rule 23(c)(3). (See Doc. No. 22 at 15-16.) Following the Court's grant of preliminary approval, CPT – the settlement administrator – received the class data file from Defendant, which included mailing addresses for 517 unique class members from Defendant. (Doc. No. 23-3, Singh Decl. ¶ 5.) After processing and updating those addresses against the National Change of Address database maintained by the United States Postal Service, on May 22, 2024 ILYM mailed the notice packets to the 517 class members via U.S. First Class Mail. (Id. ¶ 6.) CPT represents that a total of 11 notice packets have been deemed undeliverable because CPT found no updated address despite performing skip tracing. (Id. ¶ 7.) As of July 17, 2024, CPT has not received any requests for exclusion. (Id. ¶ 8.) As such, 100% (517/517) of the class is participating in the settlement. (Id. ¶ 9.) Given the above, the Court finds that CPT provided adequate notice per the Court's preliminary approval order, (see Doc. No. 22 at 15-16), and satisfied Rule 23(e).

/ / /

/ / /

B.  Final Fairness Determination

A proposed class settlement can only be approved if "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, district courts in the Ninth Circuit consider several factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quotations omitted). A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" In re Heritage Bond Litigation, No. 2-ML-01475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1991)). Further, the Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly when the parties are represented by experienced counsel. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). Nevertheless, when "class counsel negotiates a settlement agreement before the class is even certified," settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citations omitted). As such, courts must also scrutinize proposed settlements for "evidence of collusion or other conflicts of interest." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

1.  The Strength of Plaintiff's Case and the Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval.

Class counsel represents that although it firmly believes in the strength of Plaintiff's claims, Defendant has strong defenses to Plaintiff's claims, and those defenses impose a significant risk of no recovery for the class in this action if the case were to proceed. (Doc. No. 17-2, Hawkins Decl. ¶¶ 46-52; Doc. No. 17-1 at 15-16.) Class counsel also represents that there is no certainty that Plaintiff could prove sufficient systematic violations at Defendant's hands to certify the class. (Doc. No. 23-2, Hawkins Decl. ¶ 24.)

In this action, Defendant has factually denied all allegations and argued that its policies always complied with the laws. (Doc. No. 17-2, Hawkins Decl. ¶¶ 25, 50.) Specifically, Defendant argues that to the extent there was any off-the-clock time, such time was de minimis and/or was a result of personal preference—not any company-wide unlawful policy. (Id. ¶ 55.) Defendant has produced policies which prohibited off-the-clock work and denied that it had any knowledge that class members purportedly worked off the clock. (Id.)

Defendant has argued that very little overtime was worked during the relevant period, and that when overtime was worked it was always paid at the proper rate. (Id. ¶ 59.) Defendant also argued that it maintained facially compliant meal period policies and that employees were directed not to perform any work during meal and rest periods. (Id. ¶ 67.) Defendant produced evidence that class members had attested to taking compliant meal and rest period for the days in which violations are alleged, and if an attestation was not provided, a premium was automatically paid. (Id.) Defendant further contended that putative class members took their rest breaks and were trained and reminded to take them. (Id. ¶ 71.) Defendant also contended that it complied with all wage statement requirements and that there was no policy requiring employees to use cell phones, and, in fact, there were no job duties that required employees to use their cell phones. (Id. ¶¶ 75, 83.) As to the PAGA claims, Defendant argued that because the PAGA portion of the action relies heavily on the same allegations made in Plaintiff's class claims, the PAGA claims are subject to the same defenses set forth above. (Doc. No. 23-1 at 6.)

Class counsel represents that, based upon the uncertainty associated with

Defendant's asserted defenses, the risk in certifying a class, the possibility of Defendant prevailing on potentially dispositive motions, and a potential trial, the settlement is fair, reasonable, and adequate. (Doc. No. 23-2, Hawkins Decl. ¶ 23.) Class counsel contends that the settlement affords the class members prompt and substantial relief, while avoiding significant legal and factual obstacles that otherwise may have prevented the class members from obtaining any recovery at all. (Id.) Class counsel notes that the outcome of class certification, trial, and any attendant appeals is inherently uncertain. (Id.) See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." (internal quotation marks and citation omitted)). In light of the above, the Court concludes that the strength of the parties' positions as well as the risk of further litigation weigh in favor of approving the settlement.

### 2. The Settlement Amount

In determining whether a settlement agreement is substantively fair to the class, courts must balance the value of the plaintiffs' expected recovery against the value of the settlement offer. In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The Ninth Circuit has cautioned that "the proposed settlement is 'not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'" Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc., No. 19-cv-01581-JLT-CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023) (emphasis removed) (quoting Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted)).

Here, the parties agreed to settle all claims for a gross settlement amount of $325,000.00. (Doc. No. 17-2, Hawkins Decl. ¶¶ 26, 52, 90.) After deducting for fees, costs, the incentive award, and PAGA payments, the net settlement amount offered to the class members totals approximately $171,609.43. (Doc. No. 23-3, Singh Decl. ¶ 11.) The average estimated recovery for each class member will be $331.93 and the highest payout will be $1,047.46. (Id.) At the preliminary approval stage, class counsel engaged in an

extensive analysis of its claims and reasonably estimated that Defendant's realistic exposure in this matter is approximately $966,690.50 inclusive of PAGA and $840,470.50 exclusive of PAGA. (Id. ¶¶ 54-90.) Thus, the $325,000 gross settlement amount represents approximately 33.6% of the realistic liability faced by Defendant including PAGA and 38.7% not including PAGA penalties. (Id.) This settlement amount is reasonable when compared with other wage and hour settlements approved by California federal courts. See Glass v. UBS Fin. Servs., Inc., No. C–06–4068–MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving settlement of wage and hour claims where settlement amount represented 25-35% of the maximum estimated damages); Greko v. Diesel U.S.A., Inc., No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (approving settlement of wage and hour claims where settlement amount represented approximately 24% of the estimated damages modeled by class counsel); see also Officers for Just., 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the gross settlement amount is the result of arm's-length negotiation conducted by experienced counsel and an experienced mediator. See Rodriguez, 563 F.3d at 966 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

        3.    The Extent of Discovery Completed and the Stage of the Proceedings

Prior to reaching a settlement, the parties engaged in informal and formal discovery. Class counsel developed a discovery plan and served formal discovery on Defendant, including requests for production, interrogatories, and Rule 30(b)(6) deposition notices. (Doc. No. 17-2, Hawkins Decl. ¶ 16.)

In preparation for mediation, the parties agreed to engage in an informal document

and information exchange.  (Id.)  As part of this, class counsel sent a list of requested documents and items to defense counsel, and Defendant produced time record/punches and pay records, as well as attestation records for the members of the putative class for evaluation by class counsel and their expert.  (Id. ¶ 17.)  Defendant also provided data points for the putative class members, the number of workweeks and pay periods at issue, and the number of purportedly aggrieved employees.  (Id.)  In addition to the time and pay records, and attestation data, class counsel reviewed hundreds of pages of personnel records, policy and procedure documents, earnings statements, memoranda, emails, tasks and policies.  (Id.)  Class counsel represents that these document and data exchanges allowed it to fully assess the nature and magnitude of the claims being settled, as well as the impediments to recovery.  (Id. ¶ 18; see also id. ¶ 23.)

On October 5, 2023, the parties participated in a full day of arm's length bargaining at a mediation with an experienced wage and hour class action mediator.  (Id. ¶ 19.)  The process was adversarial, and the parties were unable to reach an agreement on their own.  (Id.)  It was only with the mediator's assistance that the parties were able to reach the proposed settlement.  (Id.)

Considering this history, the record supports the conclusion that the parties conducted sufficient discovery to allow them to make an informed decision to settle this case.  See Yanez v. HL Welding, Inc., No. 20-cv-01789-MDD, 2021 WL 3054986, at *7 (S.D. Cal. July 20, 2021) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement." (internal quotations omitted) (quoting Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 170 (N.D. Cal. 2019))); Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("[T]he parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement."); Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").  As such, this factor also weighs in favor of granting

final approval of the settlement.

### 4. The Experience and Views of Counsel

Class Counsel has extensive experience acting as counsel in wage and hour class actions. (See Doc. No. 24-2, Hawkins Decl. ¶¶ 33-36, 49-53.) Class counsel represents that, based on his experience, the proposed settlement is fair, reasonable, and adequate and represents a great result for the class members. (Doc. No. 23-2, Hawkins Decl. ¶ 22.) Class counsel's expertise and sound support of the settlement weighs in favor of granting final approval. See In re Immune Resp. Sec. Litig., 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (The parties' "negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement."); see also Blount v. Host Healthcare, Inc., No. 21-cv-00310-MMA, 2022 WL 1094616, at *3 (S.D. Cal. April 12, 2022) ("Great weight is accorded to the recommendation of counsel," because "parties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in the litigation" (citations and internal quotations omitted)).

### 5. Presence of a Government Participant

No government entity participated in this case. However, the proposed settlement will result in $10,000.00 in PAGA penalties, $7,500.00 of which will be paid to the LWDA. (Doc. No. 23-1 at 9; Doc. No. 23-3, Singh Decl. ¶ 10; Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement § 1.19.) Class counsel provided notice and a copy of the settlement to the LWDA prior to filing Plaintiff's motion for preliminary approval. (Doc. No. 17-2, Hawkins Decl. ¶¶ 4, 36.) To date, the LWDA has not made any objections to the proposed settlement. Because the class shares civil penalties with the State of California, this factor weighs in favor of final approval of the settlement. See Cordova v. BAE Sys. Tech. Sols. & Servs., Inc., No. 20-CV-2425 JLS (MDD), 2022 WL 298365, at *8 (S.D. Cal. Feb. 1, 2022) (weighing PAGA penalties in favor of settlement approval and collecting cases).

6. <u>The Reaction of the Class Members to the Proposed Settlement</u>

There are 517 class members. (Doc. No. 23-3, Singh Decl. ¶ 5.) As of July 17, 2024, no class members have objected to the settlement, requested exclusion, or submitted a dispute. (<u>Id.</u> ¶ 8; Doc. No. 23-2, Hawkins Decl. ¶ 13.) The complete lack of objections indicates the adequacy of the settlement. <u>See</u> <u>Benitez v. W. Milling, LLC</u>, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020) ("[I]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citation omitted). As such, the class members' reaction weighs in favor of granting final approval.

7. <u>No Signs of Collusion</u>

The collusion inquiry addresses the possibility that the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. <u>Staton</u>, 327 F.3d at 960. The Ninth Circuit has articulated the following as "subtle signs" of collusion, including: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." <u>In re Bluetooth</u>, 654 F.3d at 947 (internal quotations and citations omitted).

Here, there is no evidence of overt misconduct nor any indication of collusion. Every class member will receive a monetary distribution, and the requested attorneys' fees are reasonable considering the record and the extensive time spent by class counsel. <u>See</u> Order <u>infra</u> Section IV.A. There is no clear sailing arrangement as part of the parties' settlement agreement. (<u>See generally</u> Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement.) Additionally, the fund is non-reversionary, meaning that none of the funds will revert to Defendant. (<u>See</u> Doc. No. 23-1 at 8.) Finally, the proposed settlement was

the result of significant arms-length negotiations between experienced counsel with a respected mediator after years of litigation.  See Mauss v. NuVasive, Inc., Case No. 13cv2005 JM (JLB), 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (finding no collusion based on extensive litigation, counsel's experience, and the parties' participation in mediation).

### 8. Approval Conclusion

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960.  As such, the Court approves the settlement.

## III. Final Approval of PAGA Penalties

The settlement agreement resolves claims brought under PAGA. (Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement §§ 1.19, 5.6, 6.1.) "A PAGA representative action is . . . a type of qui tam action" where a private plaintiff pursues a dispute between an employer and the California LWDA as the proxy or agent of the state.  Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); Cal. Lab. Code § 2699(a).  "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any [PAGA] settlement." Ramirez v. Benito Valley Farms, LLC, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); see Cal. Lab. Code § 2699 (l)(2).  Proposed settlements must also be submitted to the LWDA.[2]  See Cal. Lab. Code § 2699 (l)(2).  No binding authority sets forth the proper standard of review for PAGA settlements; however, California district courts often apply "a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'"  Arredondo v. Sw. & Pac. Specialty Fin., Inc., No.

---

[2]   Class counsel provided notice and a copy of the settlement to the LWDA prior to filing Plaintiff's motion for preliminary approval of class action settlement. (Doc. No. 17-2, Hawkins Decl. ¶¶ 4, 36.)

118CV01737DADSKO, 2022 WL 2052681, at *9 (E.D. Cal. June 7, 2022) (quoting Haralson, 383 F. Supp. 3d at 972).

Here, the settlement agreement provides for $10,000.00 in civil PAGA penalties. (Doc. No. 23-1 at 9; Doc. No. 23-3, Singh Decl. ¶ 10; Doc. No. 17-2, Hawkins Decl. Ex. 1, Settlement Agreement § 1.19.) Pursuant to PAGA, 75% of the civil PAGA penalties, or $7,500, will go to the LWDA, and 25%, or $2,500, will be distributed proportionally to all PAGA members. (Id.) See also Cal. Lab. Code § 2699(i). This amount of PAGA penalties represents approximately 3.1% of the gross settlement amount. In addition, there have been no objections to the settlement from the LWDA or class members. (See Doc. No. 23-3, Singh Decl. ¶ 8.) As such, the Court finds that the settlement agreement's $10,000.00 PAGA penalty is reasonable, fundamentally fair, and adequate. See Alcala v. Meyer Logistics, Inc., No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA penalties between 0 and 2% of the gross settlement amount).

**IV.  Attorneys' Fees, Costs, and Incentive Payment to Class Representative**

Having granted final approval of the settlement, the Court now turns to class counsel's request for attorneys' fees, costs, and an incentive payment to the class representative. Here, class counsel requests $108,333.33 in attorneys' fees, $15,057.24 in litigation expenses, and $10,000 as an incentive payment for the class representative. (Doc. No. 24-1 at 1.)

A.  Attorneys' Fees

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941.

With respect to the attorneys' fees, "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered

the benchmark" in common fund cases. Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010); Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Regardless of whether courts use the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified several factors that may be relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, class counsel requests an award of $108,333.33 in attorneys' fees to be paid from the gross settlement amount. (Doc. No. 24-1 at 1; Doc. No. 24-2, Hawkins Decl. ¶¶ 24, 26.) The requested amount of attorneys' fees is one-third (33 1/3%) of the total settlement fund of $325,000.00. (See id.) This is a higher percentage than the Ninth Circuit's 25% benchmark for common fund cases. Nevertheless, class counsel achieved an overall award that was favorable, and the risks of continuing to litigate this case were real and substantial. See supra Order Section II.B.1. Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (See Doc. No. 24-2, Hawkins Decl. ¶¶ 27, 47.) Further, class members received notice of the requested attorneys' fees award, and no class members have objected. (See Doc. No. 23-3, Singh Decl. ¶ 8.) And the requested fee award is in line with what other district courts in this Circuit have awarded in cases where class counsel took the case on contingency and no class member objected or opted out of the settlement. See, e.g., Taylor v. Populus Grp., LLC, No. 20-CV-0473-BAS-DEB, 2023 WL 139898, at *4 (S.D. Cal. Jan. 9, 2023) ("[C]ourts in this district have approved 33.3% attorneys' fees in wage and hour class

action settlements."); <u>Anthony Ayala v. U.S Xpress Enterprises, Inc.</u>, No. EDCV 16-137-GW-KKX, 2023 WL 6559786, at *7 (C.D. Cal. Sept. 15, 2023) (approving 33% fee award in wage and hour class action where class counsel took the case on contingency and no class member objected or opted out of the settlement); <u>Ochinero v. Ladera Lending, Inc.</u>, No. SACV191136JVSADSX, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) (approving 33% fee award from common fund settlement where counsel took the case on contingency and no class member objected); see also <u>Arredondo</u>, 2022 WL 2052681, at *12-15 (approving 30% fee award from common fund wage and hour settlement where counsel took the case on contingency and there were no "objections to the settlement or requests for exclusions").

Finally, as a cross-check, class counsel represents that the fees calculated under the lodestar method would be approximately $142,987. (Doc. No. 24-1 at 13; Doc. No. 24-2, Hawkins Decl. ¶¶ 31-40.) Thus, the amount class counsel requests ($108,333.33) is approximately 0.76 times what class counsel would receive under the lodestar method ($142,987). See <u>In re Bluetooth.</u>, 654 F.3d at 944–45 (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method). A multiplier of 0.76 is an implied negative multiplier, and "[a]n implied negative multiplier supports the reasonableness of the percentage fee request." <u>Nosirrah Mgmt., LLC v. Franklin Wireless Corp.</u>, No. 21-CV-1316-RSH-JLB, 2024 WL 666149, at *13 (S.D. Cal. Feb. 16, 2024) (quoting <u>Schiller v. David's Bridal, Inc.</u>, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012), <u>report and recommendation adopted</u>, No. 1:10-CV-616-AWI-SKO, 2012 WL 13040405 (E.D. Cal. June 28, 2012)); <u>see also</u> <u>Vizcaino</u>, 290 F.3d at 1051 & n.6 (affirming multiplier of 3.65x in a common fund case, and noting that the vast majority of common fund cases result in a multiplier of between one and four).

B.  <u>Costs</u>

Class counsel represents to the Court that they incurred litigation expenses in the amount of $15,057.24. (Doc. No. 24-1 at 16; Doc. No. 24-2, Hawkins Decl. ¶ 24, 48, Ex.

3.) This amount is below the $20,000 upper limit for costs set forth in the parties' settlement agreement and preliminarily approved by the Court. (See Doc. No. 17-2, Settlement Agreement § 5.3; Doc. No. 22 at 14-15.) "'Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case.'" Taylor, 2023 WL 139898, at *4; see Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) ("An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund."). "The award 'should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary.'" Carlin, 380 F. Supp. 3d at 1023 (quoting In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)).

After reviewing class counsel's declaration regarding expenses, the Court concludes that the requested litigation expenses are reasonable, and grants class counsel's request for those fees. As such, the Court grants Plaintiff's request for $15,057.24 in litigation costs.

C.   Incentive Award to Class Representative

Class counsel requests a $10,000 incentive award for the class representative. (Doc. No. 24-1 at 1; Doc. No. 24-2, Hawkins Decl. ¶ 16.) "The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted).

After reviewing these factors, the Court concludes that the requested incentive award is fair and reasonable. During this litigation, Plaintiff spent hours on calls with class counsel discussing the facts of the case. (Doc. No. 24-3, Granados Decl. ¶ 12.) Plaintiff also spent hours looking for all documents related to his employment with Hyatt and

sending them to class counsel, which included wage statements, personnel documents, emails, and separation paperwork. (Id. ¶ 13.) In addition, Plaintiff took on financial and professional risks by being the class representative and bringing the present class action lawsuit, including the potential of paying court-awarded litigation costs to Defendant and the negative exposure to future employers. (Id. ¶ 17.) Finally, the $10,000 incentive award requested is well within the acceptable range awarded in similar cases. See Gutierrez v. Amplify Energy Corp., No. 8:21-CV-01628-DOCJDEX, 2023 WL 6370233, at *8 (C.D. Cal. Sept. 14, 2023) ("Service awards of $7,500 or larger are often awarded in this Circuit."); see, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). As such, the Court grants Plaintiff's request for an incentive award of $10,000.

## Conclusion

For the reasons above, the Court grants Plaintiff's motions. The Court has jurisdiction over the subject matter of this action and all parties to the action, including the settlement class members. First, the Court certifies the settlement class and grants final approval of the settlement, including the PAGA payment. All persons who satisfy the class definitions and did not opt out of the settlement classes by the deadline are class members bound by this Order. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution. Second, the Court grants class counsel $108,333.33 in attorneys' fees and $15,057.24 in documented out-of-pocket litigation expenses. The Court also grants $10,000.00 in costs to the settlement administrator. Further, the Court grants Plaintiff an incentive award of $10,000.00. The attorneys' fees, costs, and incentive award will be paid out of the settlement fund.

**IT IS SO ORDERED.**

DATED: August 26, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT